## 1590

Lynda H. WANNAMAKER, Respondent-Appellant v. Braxton B.
WANNAMAKER, Appellant-Respondent.

(406 S.E. (2d) 180)

Court of Appeals

*Robert B. Wallace* and *Paul E. Tinkler,* both of *Wallace & Tinkler,* Charleston, *for appellant-respondent.*

*A. Arthur Rosenblum,* Charleston, *for respondent-appellant.*

Heard Nov. 5, 1990.

Decided Jan. 7, 1991.

GARDNER, Judge:

This is a cross appeal involving equitable division. The parties were separated for eleven years before commencing marital litigation. The appealed order equitably apportioned the husband's medical practice and other property acquired after separation but before institution of marital litigation. We affirm in part, modify in part, reverse in part and remand.

## ISSUE

The only issue of merit presented by the wife is whether the trial judge erred in failing to find that some of her husband's stock was transmuted into marital property.

The issues of merit presented by the husband are whether (1) the trial judge erred in apportioning the wife an interest in the husband's medical practice, which started six years after the separation, (2) the trial judge erred in apportioning the wife an interest in the husband's retirement funds which he acquired during the years following the separation, (3) the trial judge erred in requiring the husband to pay half of the fee for the court appointed expert whose assignment was to evaluate the husband's interest in the medical partnership.

## FACTS

Braxton B. Wannamaker (the husband) and Lynda H. Wannamaker (the wife) were born in Orangeburg County, South Carolina, and were childhood sweethearts. They married at the age of sixteen and had four children, all of whom now are emancipated except the oldest daughter who is doing

post-graduate study at her father's expense.

After the marriage, the husband fnished high school, attended Clemson and graduated from the medical college in Charleston, Souh Carolina. They moved to Wisconsin where the husband did his residency. After completing his residency, the husband joined the army and the parties separated. While stationed in Japan, the husband had an affair. The husband later told the wife about his affair, and the parties reconciled. The parties separated permanently in August 1977, after the husband confronted the wife about an affair she was having with a workman at their home. The parties were not divorced until April 11, 1988.

While the parties were living together, the husband enjoyed an income from work, dividends and capital gains in the amount of $357,583. During the same period the wife had an income of $5,150. After the separation, the husband enjoyed an income, including dividends and capital gains of $851,408.

Other pertinent facts will be included when discussing the specific issues.

## DISCUSSION

### I.

We reject the wife's contention that the husband's stocks were transmuted into the marital estate.

The husband's parents made gifts to him of stock before and during the marriage. The husband kept a bank account in Orangeburg through which he bought and sold stock and deposited dividends. The husband occasionally used funds from this account for marital purposes. The trial judge by the appealed order held that all of the husband's stock was either a gift to him or purchased with nonmarital assets. This holding is supported by the record.

Clyde Hiers, an expert certified public accountant employed by the wife, testified that he had examined the husband's receipts and disbursement journals[1] from 1948 through 1988. He introduced an exhibit summarizing pertinent findings. Hiers found that the money from the "Orangeburg ac-

---

[1] The books concerning the Orangeburg bank account were kept largely by the husband's mother. The husband's parents began giving him stocks early in his life and continued doing so.

count" was spent for marital purposes in some instances or transferred to other accounts held by the husband in other instances. His scrutiny of the 41-year account history, however, revealed no instance of marital funds being used to acquire the stocks in question.

In summary, both parties' property interest in "marital property" is set forth in The Equitable Apportionment of Marital Property Act, S.C. Code Ann. §§ 20-7-471 through 20-7-479 (Supp. 1989) (the Act). These statutes provide that during the marriage a spouse shall acquire, based upon certain factors set out in § 20-7-472, a vested special equity in property acquired during the marriage. Specifically exempted from the marital estate is property acquired by a party as a gift from some one other than the spouse, property acquired before the marriage, property acquired by either party in exchange for gifted property or inherited property, and any increase in the value of nonmarital property, except to the extent that the increase resulted directly or indirectly from efforts of the other spouse during the marriage.[2]

The Act does not define or even recognize "transmutation," the doctrine that nonmarital property can become marital property. The doctrine, however, was recognized by our courts before[3] and after[4] enactment of the Act. There is now a large body of law on the subject. The case of *Johnson v. Johnson*, 296 S.C. 289, 372 S.E. (2d) 107 (Ct. App. 1988), a landmark opinion by Judge Bell, provides a useful summary of this law. That case held, *inter alia*, that (1) transmutation is a matter of intent to be gleaned from the facts of each case, (2) the mere use of separate properties to support the marriage without some additional evidence of intent to treat it as marital property, is not sufficient to establish transmutation and (3) the spouse claiming the transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage. 296 S.C. at 295-296, 372 S.E. (2d) at 110-111.

■  Nonmarital property can become transmuted into marital property when it becomes so comingled as to be untraceable. *See Hussey v. Hussey*, 280 S.C. 418, 425, 312

---

[2] S.C. Code Ann. § 20-7-473(1), (2), (3) and (5) (Supp. 1989).

[3] *See Hussey v. Hussey*, 280 S.C. 418, 312 S.E. (2d) 267, 270 (Ct. App. 1984).

[4] *See Strickland v. Strickland*, 297 S.C. 248, 376 S.E. (2d) 268 (1989).

S.E. (2d) 267, 270 (Ct. App. 1984). The phrase "so co-mingled as to be untraceable" is all important because the mere comingling of funds does not automatically make them marital funds.

The Orangeburg account was kept in the husband's name. Good records were kept as to the deposits and disbursements in this account. We hold that the preponderance of evidence establishes that the funds of the Orangeburg account used to purchase stock were traced to the individual property of the husband.

The argument that if any portion of the husband's separate estate is used in the furtherance of the marriage, the entire account loses its independent status and becomes marital property is without merit. *See Brooks v. Brooks*, 289 S.C. 352, 345 S.E. (2d) 510 (Ct. App. 1986).

We concur with the finding of the trial judge that the husband's stocks purchased from the Orangeburg account are his separate property and the implied ruling that there was no transmutation. We, therefore, reject the wife's argument that the stocks owned by the husband were transmuted into the marital estate.

## II.

We hold that the trial judge erred in apportioning the wife an interest in the husband's medical partnership which he established after the separation.

The trial judge, by the appealed order, apportioned the wife a 50 percent interest in the husband's share of his medical partnership which was formed January 1, 1985, some eight years after the parties had separated. The trial judge found that the wife's services as a housewife and mother during the period of the husband's medical training justified an award of 50 percent of the medical partnership interest which amounted to $34,721. We disagree.

As noted previously, Section 20-7-473 defines marital property as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation. . . ." This statute then exempts inherited property, etc. Section 20-7-472 provides that in making apportionment, the court must give weight in such proportion as it finds ap-

propriate to fifteen factors including (1) fault in causing the separation, (2) the contribution of each spouse to the acquisition and appreciation and value of the marital property, (3) and such other relevant factors as the trial court shall expressly enumerate in its order.

The parties' final separation came about when the wife began a relationship with another man. The husband insisted that the wife terminate her relationship with this man, but she refused. The husband then moved out. The trial judge found, and we agree, that the wife was substantially at fault in causing the separation.

After the parties separated in 1977, the husband continued to work as a professor at the medical college until 1984 when he began a private practice in neurology. The husband entered a medical partnership on January 1, 1985.

While we recognize the rule that a spouse need not prove that he or she made a material contribution to the acquisition of particular property in order to be entitled to an equitable interest in it,[5] we hold in this case that the special circumstances of the long separation of the parties before institution of marital litigation must be factored in as a special consideration. The husband's medical partnership began in 1985, some eight years after the parties separated. The wife contributed nothing to either the acquisition or appreciation of the value of the partnership. We hold, under these special circumstances of this case, that the wife, whose adultery brought about the separation of the parties and the break up of this family, should not be apportioned an interest in the husband's medical partnership.

The award that the trial judge made appears to be an attempt by the trial judge to compensate the wife for her failure to receive alimony, which was barred because of her adultery. Equitable distribution cannot be used because alimony is barred. *Berry v. Berry*, 294 S.C. 334, 364 S.E. (2d) 463 (1988).

Accordingly, we hold that the trial judge erred in apportioning the wife part of the husband's interest in the medical partnership and modify the appealed order to conform with this decision.

---

[5] *See Reid v. Reid*, 280 S.C. 367, 312 S.E. (2d) 724 (Ct. App. 1984).

## III.

We find that the trial judge also erred in apportioning the wife a part of the retirement fund accumulated by the husband after starting his practice. We base this holding on essentially the same reasons given above with reference to the medical partnership. The wife was at fault in bringing about the separation, and she contributed absolutely nothing to the accumulation of the retirement fund. Accordingly, we hold that the preponderance of the evidence establishes that the wife should not be apportioned a part of the husband's retirement account accumulated after separation, and we modify the appealed order to conform with this decision.

## IV.

Finally, we hold that the trial judge erred in requiring the husband to pay half of the fee for the court appointed expert whose assignment was to evaluate the husband's interest in his medical partnership. The wife contended that she should be apportioned a part of the husband's interest in the medical partnership. The husband vigorously opposed this contention. The trial judge, apparently after erroneously deciding that the wife should be apportioned a part of the husband's interest in the medical partnership, appointed an expert to evaluate the husband's interest. We hold that the trial judge erred in ordering the husband to pay half of the expert's fee because the premise upon which the trial judge apportioned the husband's interest in the medical partnership was erroneous. We modify the appealed order to conform with this decision.

Lastly, we hold that the trial judge did not err by requiring the husband to pay the wife's attorney fees. The award of attorney fees is within the court's discretion. *Jones v. Jones*, 290 S.C. 49, 348 S.E. (2d) 178 (Ct. App. 1986). We find no abuse of discretion.

## CONCLUSION

For the reasons stated above, we hold (1) that the trial judge properly held that the husband's stock was not transmuted, (2) that the trial judge erred in apportioning the wife an interest in the husband's medical partnership and the re-

tirement funds which the husband acquired after separation, (3) that the trial judge erred in requiring the husband to pay half of the expert's appraisal fee. We, therefore, affirm in part, reverse in part, and modify the appealed order to conform with this decision and remand for purposes of entry of judgment in accordance with this decision.

Affirmed in part, modified in part, reversed in part and remanded.

SANDERS, C.J., and LITTLEJOHN, Acting Judge, concur.

