705 S.E.2d 86

Martha Joy Culbreth MYERS, Respondent,

v.

Andrew Michael MYERS, Appellant.

No. 4776.

Court of Appeals of South Carolina.

Heard Dec. 7, 2010.

Decided Jan. 20, 2011.

W.D. Yarborough, Jr., of Greenville, for Appellant.

Timothy E. Madden, of Greenville, for Respondent.

WILLIAMS, J.

On appeal, Andrew Myers (Husband) claims the family court erred in (1) awarding Martha Myers (Wife) $3,000 in permanent periodic alimony; (2) dividing certain assets in the marital estate; and (3) ordering Husband to pay sixty percent of Wife's attorney's fees. We affirm in part and reverse in part.

## FACTS

Husband and Wife were married for nine years prior to Wife filing for divorce. This was the third marriage for both Husband and Wife, and no children were born of the marriage. As of the date of trial, Wife was sixty-two years old and Husband was sixty-five years old.

During the parties' marriage, they lived in Husband's home located in an upscale neighborhood in Greenville, South Carolina. Wife, a high school graduate, was a part-time teller at a local bank and earned approximately $2,455 per month. Husband was an insurance salesman and the sole owner and operator of an insurance agency, Advanced Health Insurance Service, Inc. According to Husband's W–2 and financial declaration, he earned approximately $7,116 per month or

$85,399.20 per year. As owner of his business, Husband received other economic benefits apart from his salary, such as rental income from his office building and expense and travel reimbursements. By the parties' agreement, Wife used her salary exclusively for her own benefit while Husband paid all the bills and their living expenses from his earnings. Both parties testified they had a comfortable lifestyle during their marriage. Husband enjoyed golfing and hunting on a routine basis, and Wife's leisure activity of choice was shopping.

Wife testified she filed for divorce after Husband walked out on the marriage. Wife filed for separate support and maintenance and subsequently amended her complaint to request attorney's fees as well as a divorce based on Husband's desertion. At the one-day trial, Husband moved to amend his answer to request a divorce based on one year's continuous separation, and Wife did not contest this motion.

In its final order, the family court granted the parties a divorce based on one year's continuous separation. The family court found Husband's business and the parties' marital home were nonmarital assets, but it awarded Wife a special equity interest in the amount of $19,000 based on renovations to the house using Wife's premarital funds. The court granted Wife certain marital property, which was given to Wife by Husband during the parties' marriage. Specifically, the court awarded Wife a 2001 Acura MDX vehicle, her diamond engagement ring, a full-length fur coat, and other furniture and personal property in Wife's possession. The family court then awarded Wife one-third of the remainder of the marital estate.

In its decision to award Wife alimony, the family court stated it considered the factors set forth in section 20–3–130 of the South Carolina Code. In setting Wife's alimony, the court found Wife's reasonably anticipated expenses were approximately $6,000 per month based on Wife's lifestyle during the marriage. The court noted Husband's expenses were approximately $6,000 per month but found several of these expenses were "double counted" because Husband reimbursed himself for those expenses through his business. As a result, the family court found Husband's income was closer to $100,000; thus, he could afford to contribute towards maintaining Wife's

lifestyle and consequently awarded Wife $3,000 per month in permanent periodic alimony.

Husband filed a Rule 59(e), SCRCP, motion, which the family court denied. This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Nasser–Moghaddassi v. Moghaddassi*, 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005). However, this broad scope of review does not require this court to disregard the family court's findings. *Id.* at 189–90, 612 S.E.2d at 711. When evidence is disputed, the appellate court may adhere to the findings of the family court, who saw and heard the witnesses. *Id.* at 190, 612 S.E.2d at 711. The family court was in a superior position to judge the witnesses' demeanor and veracity and, therefore, its findings should be given broad discretion. *Woodall v. Woodall* 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). Moreover, the court's broad scope of review does not relieve the appellant of the burden of proving to this court that the family court committed error. *Nasser–Moghaddassi*, 364 S.C. at 190, 612 S.E.2d at 711.

## LAW/ANALYSIS

### I. Alimony

Husband does not argue Wife should not receive any alimony; rather, he contends the family court's award of alimony to Wife was excessive. We agree.

An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Dearybury v. Dearybury v.* 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002). Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage. *Craig v. Craig*, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005). However, alimony should not "serve as a disincentive for spouses to improve their employment potential or to dissuade them from providing, to the extent possible, for their own support." *McElveen v. McElveen*, 332 S.C. 583, 599, 506

S.E.2d 1, 9 (Ct.App.1998). Thus, "[i]t is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001).

When awarding alimony, the family court considers the following factors: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code § 20–3–130(C) (Supp.2009). No one factor is dispositive. *Allen,* 347 S.C. at 184, 554 S.E.2d at 425.

In awarding Wife alimony, the family court stated it considered the relevant statutory factors from section 20–3–130(C). Specifically, the court noted the following in finding Wife was entitled to alimony: the parties' current and reasonably anticipated expenses; the needs of both parties; the standard of living established during the marriage; and the tax consequences of the alimony award on Husband and Wife.

Despite the family court's findings, we find its award of alimony to Wife was excessive. Wife claimed she had monthly expenses of $6,000, but a review of her financial declaration reveals that many of her expenses were inflated for purposes of calculating Wife's entitlement to alimony. For example, Wife claimed she spent $2,300 per month on clothing, entertainment, trips, clubs, hair care, cosmetics, pet care,[1] nails, tanning, and gifts. Further, despite having no children or dependents living in Wife's home, she claimed almost $1,000 per month for "food and household supplies." When questioned about this expense at trial, Wife admitted she actually only spent $400 per month on food, and many of the other

---

1. Wife claimed she spent $185 per month in pet care, despite Husband having custody of the parties' dog during the pendency of this action and being awarded the dog in the final order.

household expenses were one-time expenditures associated with settling into her new home.

■ The record indicates the parties enjoyed a comfortable standard of living during their marriage, but these expenditures are overstated. While Wife is entitled to a reasonable amount of alimony, it is error to award her permanent alimony substantially in excess of her needs. *See McElveen,* 332 S.C. at 600, 506 S.E.2d at 10 (finding wife's living expenses, as stated in her financial declaration, were unnecessarily inflated, thereby reducing Husband's monthly alimony obligation from $11,000 per month to $7,500 per month); *Brandi v. Brandi,* 302 S.C. 353, 358, 396 S.E.2d 124, 127 (Ct.App.1990) (finding family court abused its discretion in award of alimony to wife because wife's expenses were clearly excessive); *Woodward v. Woodward,* 294 S.C. 210, 217, 363 S.E.2d 413, 417 (Ct.App. 1987) (finding permanent alimony of $3,000 per month was excessive when wife had been awarded fair percentage of marital estate and her expenses exceeded income by only about $600 per month). To sustain this alimony award would effectively penalize Husband and reward Wife. *See Donahue v. Donahue,* 299 S.C. 353, 362, 384 S.E.2d 741, 746 (1989) (Alimony "is not intended to penalize one spouse while rewarding the other.").

In support of its award, the family court noted Husband's expenses were slightly more than $6,000 but apparently discounted these expenses by finding Husband "double counted" his house insurance and was reimbursed by his business for his automobile payment and automobile expenses. However, Husband noted on his declaration that his house insurance was included in his loan payment and expressly deducted his house insurance from his monthly expenses. Furthermore, even if we exclude the automobile expenses from Husband's declaration, an award of this size is unfairly structured in Wife's favor, particularly when other factors militate against a $3,000 monthly alimony award. *See Allen,* 347 S.C. at 184, 554 S.E.2d at 424 ("It is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded.").

Specifically, the following relevant evidence supports this conclusion: (1) Wife and Husband's marriage was not a long-

term marriage; (2) the parties were granted a no-fault divorce; (3) it was each party's third marriage; (4) no children were born of the marriage; (5) both parties were employed throughout the marriage; and (6) Wife maintained a comfortable lifestyle prior to the parties' marriage as illustrated by her waterfront home and the savings and investments she had accrued prior to the parties' marriage. We find precedent is in accord with our decision. *See, e.g., Hatfield v. Hatfield,* 327 S.C. 360, 364–65, 489 S.E.2d 212, 215 (Ct.App.1997) (denying wife alimony when it was both parties' fourth marriage, the marriage lasted for nine years, husband was seventy-one and wife was fifty-seven, wife was a part-time bank teller, and husband was a retired aircraft mechanic); *Lassiter v. Lassiter,* 289 S.C. 341, 343 n. 1, 345 S.E.2d 504, 505 n. 1 (Ct.App. 1986), *rev'd in part on other grounds,* 291 S.C. 136, 352 S.E.2d 486 (1987) (affirming denial of alimony to wife when it was wife's third marriage and both parties worked); *Eagerton v. Eagerton,* 285 S.C. 279, 284, 328 S.E.2d 912, 915 (Ct.App.1985) (finding rehabilitative alimony in the amount of $2,500 for a period of three years as opposed to permanent alimony was appropriate, despite wife's extravagant lifestyle during the marriage when parties were married for only four-and-a-half years, wife had a four-year degree, no children were born of the marriage, and wife retained substantial personal property given to her by husband during the marriage).

Our decision should not be construed to hold that a $3,000 monthly alimony award is always excessive as we have upheld similar amounts when circumstances warranted such an award. *See Craig,* 365 S.C. at 292, 617 S.E.2d at 362 (upholding $3,000 permanent periodic alimony when parties were married for twenty-five years, they had a high standard of living, and husband's infidelity led to the break-up of the marriage); *Rimer v. Rimer,* 361 S.C. 521, 523, 605 S.E.2d 572, 573 (Ct.App.2004) (finding $2,600 permanent periodic alimony award to wife was not excessive when husband earned $7,000 per month, wife earned $260 per month as a substitute teacher, wife's monthly expenses were $3,500, and parties were married for twenty-five years); *Mallett v. Mallett* 323 S.C. 141, 148–49, 473 S.E.2d 804, 809 (Ct.App.1996) (increasing alimony award to $6,300 when parties were married for seventeen years, the parties enjoyed a very affluent lifestyle, wife

had only been employed for four years of the marriage, and the parties' son would benefit from wife staying at home).

After a careful review of Wife's financial declaration and monthly expenses, we reduce Wife's alimony from $3,000 per month to $2,000 per month. We hold this alimony award sufficiently covers Wife's living expenses and is proper and reasonable under the circumstances.

## II. Equitable Division

Next, Husband contests the family court's division of certain assets. Specifically, Husband claims the family court erred in (1) awarding three substantial marital assets to Wife without accounting for their value in Wife's one-third share of the marital estate; (2) finding Husband's F–150 truck was a marital asset when it was exclusively purchased with Husband's inheritance from his father; and (3) finding the money in Husband's First Citizens bank account to be all marital properly. We address each argument in turn.

 The division of marital properly is within the family court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *Craig,* 365 S.C. at 290, 617 S.E.2d at 361. "An appellate court should approach an equitable division award with a presumption that the family court acted within its broad discretion." *Dawkins v. Dawkins,* 386 S.C. 169, 172, 687 S.E.2d 52, 53 (2010). The appellate court looks to the overall fairness of the apportionment. *Deidun v. Deidun,* 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct.App.2004). If the end result is equitable, the fact that the appellate court would have arrived at a different apportionment is irrelevant. *Id.*

### 1. Division of the Acura, Wife's Engagement Ring, and Wife's Fur Coat

 First, Husband contends the family court erred when it awarded Wife the Acura, her diamond engagement ring, and her fur coat but failed to account for those items in its overall apportionment of the marital estate. We disagree.

In apportioning the marital estate, the family court was required to divide the Acura, the ring, and the fur coat because those items were purchased by Husband for Wife

during the parties' marriage and thus were marital property.[2] *See* S.C.Code Ann. § 20–3–630 (Supp.2009) (stating marital property is "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation . . . "). Because of the indivisible nature of those assets and Husband's testimony that he bought those items for Wife's use, the family court was within its discretion to apportion those assets entirely to Wife. *See Marsh v. Marsh*, 313 S.C. 42, 46, 437 S.E.2d 34, 36 (1993) ("[T]he family court [has] the flexibility to view each case based on the individual circumstances peculiar to the parties involved and to fashion a division of the parties' assets in a manner that is uniquely fair to the parties concerned.").

Awarding those assets entirely to Wife results in Wife receiving greater than a one-third share of the marital estate, but we do not view this outcome as reversible error. We find the family court intended to apportion Wife more than one-third of the estate, and it effectuated the division by awarding Wife the Acura, ring, and fur coat and then awarding her additional assets that represented one-third of the marital estate's value. This finding is supported by the family court's final order, which stated, "Although marital property, Husband intended Wife to receive these items [Acura, ring, and coat] and they should be apportioned one hundred (100%) percent to [Wife]. Wife should receive about thirty-three (33%) percent of *the other* marital assets." (emphasis added).

The family court valued the Acura, ring, and fur coat at $22,200, which represented roughly fifteen percent of the marital estate's value of $148,513.08. Adding those assets to Wife's one-third portion of the estate resulted in Wife receiving approximately forty-eight percent of the marital estate. While this award is generous considering the length of the parties' marriage and Wife's direct contributions to the mari-

---

2. We note our courts have previously found engagement rings to be nonmarital property. *See McClerin v. McClerin*, 310 S.C. 99, 104, 425 S.E.2d 476, 478 (Ct.App.1992) (finding engagement ring given to wife before wedding ceremony was nonmarital property of the wife). However, Wife never argued the nature of the ring rendered it nonmarital property, so we express no opinion on the propriety of its inclusion in the marital estate.

tal estate, we do not find this division amounted to an abuse of discretion. Because the end result is equitable, we affirm the family court on this issue. *See Deidun,* 362 S.C. at 58, 606 S.E.2d at 495 ("If the end result is equitable, it is irrelevant that the appellate court would have arrived at a different apportionment.").

### 2. Husband's F–150 Truck

■ Next, Husband claims the family court erred in classifying his F–150 truck as a marital asset because it was purchased solely with inheritance from his father. We agree.

Section 20–3–630 defines marital property as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held...." However, "property acquired by either party by inheritance, devise, bequest, or gift from a party other than the spouse" is exempted as marital property under section 20–3–630. *See* § 20–3–630(A)(1).

■ The nonmarital character of inherited property may be lost if "the property becomes so commingled as to be untraceable; is utilized by the parties in support of the marriage; or is titled jointly or otherwise utilized in such manner as to evidence an intent by the parties to make it marital property." *Hussey v. Hussey,* 280 S.C. 418, 423, 312 S.E.2d 267, 270–71 (Ct.App.1984). The phrase "so commingled as to be untraceable" is important because the mere commingling of funds does not automatically make them marital funds. *Wannamaker v. Wannamaker,* 305 S.C. 36, 40, 406 S.E.2d 180, 182 (Ct.App.1991).

Wife contends the F–150 truck was purchased with funds from the parties' joint checking account, which automatically rendered the truck a marital asset. We find Wife's assertion is misplaced because even if the inheritance was deposited into the parties' joint account, this does not automatically render the inherited funds or the F–150 truck to be marital property. *See Miller v. Miller,* 293 S.C. 69, 71, 358 S.E.2d 710, 711 (1987) ("An unearned asset that is derived directly from nonmarital property also remains separate unless transmuted,

as does property acquired in exchange for nonmarital property.").

When questioned at trial, Wife admitted Husband told her that he purchased the truck with his inheritance. However, Wife stated that she included the truck on her financial declaration because she did not know whether Husband bought it with his inheritance "for sure." Wife's testimony is inadequate in light of Husband's testimony that he purchased the truck with nonmarital funds. *See Wannamaker,* 305 S.C. at 39, 406 S.E.2d at 182 (holding that to show transmutation, the spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties regarded the property as the common property of the marriage). Specifically, Husband testified at trial that he deposited a $64,000 check from his father's estate and then wrote a check for the F–150 less than twenty-four hours after he made this deposit. This testimony was corroborated by the parties' asset sheet submitted to the family court. Because Husband was the only party who ever withdrew or deposited funds into this account, and the transaction for the truck occurred within twenty-four hours of the inheritance funds being placed in the account, Wife failed to establish that these funds were so commingled as to be "untraceable." *See id.,* 305 S.C. at 40, 406 S.E.2d at 183 (holding that although money used to purchase stocks was commingled in same account with funds used for marital purposes, the stock money was accounted for and thus traceable); *see also Brooks v. Brooks,* 289 S.C. 352, 355, 345 S.E.2d 510, 512 (Ct.App.1986) (finding $16,000 inheritance that was partially used for marital purposes did not render the remaining $10,000 marital property because using a portion of an inheritance in furtherance of the marriage does not result in the entire sum losing its independent status). Accordingly, we reverse the family court's inclusion of this asset in the marital estate.[3]

---

3. Excluding the truck from the marital estate decreases the estate's value to $111,688.08, which excludes the fur coat, Acura, and ring that were awarded solely to Wife as part of her share of the marital estate. The family court awarded Wife one-third interest in the "other marital assets," which included the F–150 truck valued at $14,625. Her one-third interest in the truck would have been $4,826.25. Because we refund this amount to Husband, Husband now owes Wife $1,911.75 in

### 3. First Citizens Bank Account

 Last, Husband claims the family court erred in finding the First Citizens bank account was a marital asset. This issue is not preserved for our review because Husband failed to raise any issues regarding the family court's classification of this account in his Rule 59(e), SCRCP, motion. *See Doe v. Doe,* 370 S.C. 206, 212, 634 S.E.2d 51, 55 (Ct.App.2006) (holding that the wife's argument regarding the family court's identification and valuation of marital property was not preserved for appellate review because she failed to point out the alleged error to the family court in her Rule 59(e) motion); *see also Arnal v. Arnal,* 363 S.C. 268, 609 S.E.2d 821 (Ct.App. 2005) (finding wife's failure to raise family court's exclusion of parcel of land from marital estate in a Rule 59(e) motion precluded review of the issue on appeal).

### III. Attorney's Fees

 Last, Husband argues the family court erred in requiring Husband to pay sixty percent of Wife's attorney's fees. We agree in part.

 "An award of attorney's fees and costs is a discretionary matter not to be overturned absent abuse by the trial court." *Donahue,* 299 S.C. at 365, 384 S.E.2d at 748. However, it is not improper for this court to reverse an attorney's fees award when the substantive results achieved by trial counsel are reversed on appeal. *See Sexton v. Sexton,* 310 S.C. 501, 503–04, 427 S.E.2d 665, 666 (1993).

 In order to award attorney's fees, a court should consider several factors including: (1) ability of the party to pay the fees; (2) beneficial results obtained; (3) financial conditions of the parties; and (4) the effect a fee award will have on the party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). In determining the amount of attorney's fees, the family court should consider the nature, extent, and difficulty of the services rendered, the time necessarily devoted to the case, the professional standing of counsel, the contingency of compensation, the beneficial

cash instead of the $6,738 owed to Wife pursuant to the family court's final order.

results obtained, and the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

At the final hearing, Wife's attorney submitted a fee affidavit documenting fees and costs of $42,957. Citing to *Glasscock* in its final order, the family court required Husband to pay sixty percent of Wife's attorney's fees for a total of $25,774.20. In requiring Husband to pay this amount, the family court analyzed each factor from *Glasscock.*

We find an adjustment of Wife's entitlement to attorney's fees is merited because our decision to decrease Husband's alimony obligation to Wife and exclude the F–150 truck from the marital estate diminishes Wife's beneficial results. Thus, we modify the family court's decision and order Husband to pay fifty percent of Wife's attorney's fees. Our decision to require Husband to still contribute towards Wife's attorney's fees is threefold. First, despite Husband's success on many issues, Wife obtained beneficial results regarding her share of the marital estate and her special equity interest in the home. *See Golden v. Gallardo,* 295 S.C. 393, 395, 368 S.E.2d 684, 685 (Ct.App.1988) (finding the family court properly awarded the mother a portion of her fees and costs in suit brought by father to enforce visitation rights when both parties prevailed on some issues). Second, although we modify Husband's alimony obligation to Wife, Husband is still responsible for paying Wife permanent periodic alimony, which we view as a partial success for both parties. Third, as noted by the family court, Husband has a greater income than Wife and greater nonmarital wealth. Thus, contributing towards Wife's fees will have less of an effect on Husband's standard of living than it will on that of Wife. Taking these factors into consideration, we modify the family court's order and require Husband to pay $21,478.50 towards Wife's attorney's fees.

## CONCLUSION

Based on the foregoing, the family court's order is

**AFFIRMED IN PART, AFFIRMED AS MODIFIED IN PART, and REVERSED IN PART.**

FEW, C.J., and SHORT, J., concur.