717 S.E.2d 88

Gloria PITTMAN, Respondent,

v.

Jetter PITTMAN and Pittman Professional
Land Surveying, Inc., Defendants,

Of whom Jetter Pittman is, Appellant.

No. 4858.

Court of Appeals of South Carolina.

Submitted June 1, 2011.
Decided Aug. 3, 2011.
Withdrawn, Substituted and Refiled Oct. 18, 2011.
Rehearing Denied Oct. 18, 2011.

Thomas F. McDow and Erin U. Fitzpatrick, both of Rock Hill, for Appellant.

Daniel Dominic D'Agostino, of York, for Respondent.

THOMAS, J.

In this divorce action, Jetter Pittman (Husband) appeals the award of alimony to Gloria Pittman (Wife), the identification

and equitable division of the marital property, and the award of attorney's fees. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

The parties met in 1991 and married April 29, 2000. This was the second marriage for each. No children were born of the marriage. Wife was born in 1948, and Husband was born in 1962.

When the parties met, Husband was living and working in North Carolina. In 1993, Husband moved into Wife's house in Fort Mill. The parties pooled their funds and contributed equally to the household expenses. In addition to his regular employment, Husband also did surveying work on the side and trained Wife to help him in the field.

Since 1986, Wife has worked as a surgical nurse and kept her professional credentials current. In 1996, Husband stopped working at his job to open his own surveying business, Pittman Professional Land Surveying. He initially conducted the business from Wife's home, but later moved into a small office. Wife worked for the business, but also continued to work full-time as a nurse.

After the parties married, Wife started working only three days a week at her nursing job and made up the difference between what she would have earned had she continued full-time work as a nurse and what she was earning on the part-time schedule by working at Pittman Professional Land Surveying. Wife later reduced the time she spent at her nursing job to one day per week. Wife served as corporate secretary and handled financial matters for the business. Because Wife was older than Husband, the parties agreed to raise her salary instead of Husband's salary in order to increase her social security income so that they would have more money during their retirement. During the parties' marriage, the business prospered through their joint efforts, grossing over $800,000 in 2006. Wife's salary at Pittman Professional Land Surveying was $4,200 per month when she left the company.

The parties separated in March 2007, and Wife commenced divorce proceedings soon after. In October 2007 Husband moved in with his paramour. The following month Husband terminated Wife's employment with the business by leaving

her a voice message telling her not to come to work. Husband also hired his paramour to perform Wife's former duties at the business and paid her the same salary he paid Wife, even though the paramour had not worked outside the home for the past fifteen years. Wife filed for unemployment after Husband fired her, but Husband appealed her application to the Employment Security Commission. Wife began receiving unemployment compensation only after she and Husband appeared before the Commission.

In January 2008, following a temporary hearing in the matter, the family court issued an order (1) directing Husband to reimburse Wife $1,500 in private investigator fees, (2) granting discovery, (3) allowing both parties to hire their own appraisers to value the business and any other property that may be marital in nature and ordering both parties to cooperate in the appraisals, and (4) restraining both parties from disposing or encumbering marital assets. The court also ordered Husband to pay Wife temporary alimony of $2,500 per month, but reserved the right to offset this award against Wife's equitable distribution award if at the final hearing the court determined that an offset would be appropriate. In addition, the court declined to order Husband to rehire Wife or to prohibit Husband from hiring his paramour for Wife's position at the company.

On May 7, 2008, the family court held a hearing pursuant to a motion by Wife to compel responses to discovery. By order dated June 18, 2008, the family court determined the issues raised in the motion would be resolved once Husband produced written verification regarding certain appraisals that Wife sought and stated that the issue of attorney's fees for the motion would be addressed during the final hearing.

A portion of the final hearing took place from January 20 through January 22, 2009. After a hearing on April 2, 2009, the court issued an order directing the parties to engage Tracy Amos for the purpose of performing an evaluation of the business. Fees for the appraisal were to be paid initially by Pittman Professional Land Surveying, but could be apportioned between Husband and Wife at a later date. In addition, the parties agreed to provide information concerning property associated with the business and to allow Wife access

to the business at a designated time to verify the information that Husband provided.

The final hearing resumed in Chester County on September 29, 2009, at which time the appraiser testified as to the value of the business, Husband presented his case, and Wife testified in reply. On October 21, 2009, the family court held another hearing in the matter to address contempt proceedings brought by Wife concerning Husband's temporary alimony payments.

By order dated and filed October 23, 2009, the family court granted Wife a divorce on the ground of adultery, awarded her permanent periodic alimony of $600 per month, ordered Husband to contribute $12,500 toward Wife's attorney's fees, denied Husband's request for a credit towards the equitable distribution for some or all of the alimony paid pursuant to the temporary order, and set a deadline for Husband to finish paying the alimony arrearage from the temporary order. The family court also identified, valued, and divided the marital property, specifically finding that Pittman Professional Land Surveying had been transmuted into a marital asset and including the business in Husband's share of the marital estate.

By order dated October 30, 2009, the family court found Husband had the ability to pay alimony but willfully failed to do so. Based on this finding, the court found Husband in civil contempt and ordered him to serve ninety days in jail unless he paid $5,000 of his total arrearage.

On November 2, 2009, Husband moved to alter or amend the judgment, challenging, among other issues, (1) the finding that Pittman Professional Land Surveying had been transmuted into marital property, (2) the court's failure to consider part of the business as either nonmarital property or as part of his contribution to the marital estate, and (3) other findings relevant to alimony and equitable distribution. The family court declined to change its order, and Husband filed this appeal.

## ISSUES

I. Did the family court err in refusing to make the requisite findings of fact on which to base its awards of alimony, equitable apportionment, and attorney's fees?

II. Is the alimony award of $600 per month supported by the evidence?

III. Did the family court err in declining to offset the temporary alimony award against Wife's share of the marital estate?

IV. Did the family court err in awarding Wife $12,500 in attorney's fees?

V. Did the family court err in valuing two vehicles at $8,000 each?

VI. Did the family court err in finding Pittman Professional Land Surveying had been transmuted?

VII. Did the family court err in failing to consider the premarital value of Pittman Professional Land Surveying or Husband's nonmarital contributions toward this asset?

VIII. Did the family court err in awarding Wife a laptop computer that was purchased with funds belonging to Pittman Professional Land Surveying?

## STANDARD OF REVIEW

" 'In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. However, this broad scope of review does not require [an appellate court] to disregard the findings of the family court.' " *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011) (quoting *Eason v. Eason*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009)). The family court's equitable distribution award should be reversed only when the appellant shows the court abused its discretion. *Lewis*, 392 S.C. at 384–85, 709 S.E.2d at 651. Similarly, "[a]n award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion." *Allen v. Allen*, 347 S.C. 177, 183–84, 554 S.E.2d 421, 424 (Ct.App.2001).

## LAW/ANALYSIS

I. Findings of Fact

Husband first claims the family court erred in refusing to find the incomes, earning potential, and expenses of the

parties relating directly to issues of alimony, equitable apportionment of property, and attorney's fees. Husband is correct that a number of the findings in the appealed order are only qualitative in nature rather than quantitative; however, this deficiency is not necessarily reversible error. *See Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991) (allowing the appellate court to make its own findings of fact if the record is sufficient, even though the family court may have failed to set forth specific findings of fact and conclusions of law to support its decision). We hold the record is sufficient to make our own findings of fact regarding the issues Husband has presented on appeal and hold the family court's failure to make them does not warrant a remand.[1]

II. Alimony Award

■ Husband next complains the family court erred in awarding Wife permanent alimony of $600 per month without making any findings about the income and expenses of either party. We disagree. The family court made sufficient findings of fact that, along with the evidence in the record, would support the alimony award. In particular, the family court noted the following: (1) the parties were married nine years, during which they enjoyed a comfortable standard of living; (2) at the time of the divorce, Wife was sixty-one years old and Husband was forty-seven; (3) Husband was at fault in the breakup of the marriage; (4) Husband fired Wife, hired his paramour for her job, and paid his paramour the same salary he paid Wife; (5) whereas Husband was in good health, Wife has been under the care of a counselor because of the stress of the divorce and Husband's adultery; (6) because of their ages, neither party would be able to increase his or her earning power through additional training or education; (7) although Wife was to receive several rental properties from the marital estate, one of them was vacant and there was a mortgage payment associated with another one of the properties; (8) Husband was to receive Pittman Professional Land Surveying

---

1. Moreover, as explained below, we conclude from remarks during oral argument that where the record lacked the necessary information for this court to make a finding of fact on a particular issue, this absence resulted from the fact that the relevant evidence was not proffered to the family court.

in his share of the marital estate and could increase his income substantially through this asset; (9) the alimony would be taxable to Wife and deductible to Husband; and (10) Wife was close to retirement age, had worked in Pittman Professional Land Surveying during the entire course of the marriage, and is not underemployed given her age, experience, position, and job availability.

Furthermore, although the family court did not state findings concerning the parties' earnings, expenses, and needs in quantitative detail in its discussion concerning alimony factors, it made such findings elsewhere in the order. Earnings, for example, are referenced in the court's discussions on the parties' educational backgrounds, employment history and earning potential, and marital and nonmarital property. Similarly, the court discussed the parties' expenses and needs in its findings on standard of living and on the parties' physical and emotional health. Given these findings, we hold the family court acted within its discretion in awarding Wife permanent alimony of $600 per month. *See Craig v. Craig,* 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005) ("An award of alimony rests within the sound discretion of family court and will not be disturbed absent an abuse of discretion."); *Myers v. Myers,* 391 S.C. 308, 314, 705 S.E.2d 86, 90 (Ct.App.2011) (stating that in determining an appropriate alimony award, "[n]o one [statutory] factor is dispositive").[2]

III. Offset of Temporary Alimony

 Husband next argues the family court erred in declining to award him an offset of the temporary alimony that he was ordered to pay against Wife's share of the marital property. To support his complaint, he asserts (1) the record lacks support for the temporary alimony award of $2,500 per month and (2) in view of the provision in the temporary order that the family court "reserves the right to offset temporary alimony against [Wife's] equitable distribution if the Court at the final hearing determines that such is appropriate," the family

---

2. We further note that, contrary to Husband's assertion in his reply brief that Wife has the option of receiving her Social Security benefits and continuing to work, this option would be available only when she reached "full retirement age," which she had not done at the time the divorce decree was issued.

court's refusal to consider the possibility of an offset amounted to an abuse of discretion. On appeal, he suggests that this court determine a reasonable amount for permanent alimony and apply the remaining balance to Wife's share of the apportionment of the marital property. We find no reversible error.

Husband did not offer any arguments or supporting authority for his position that the temporary alimony award was excessive or otherwise unwarranted. We therefore hold he has abandoned the issue of whether the record supports the award of temporary alimony. *See First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (holding the appellant, in failing to provide arguments or supporting authority for one of his assertions, was deemed to have abandoned the corresponding issue).

In support of its decision to decline to treat any part of the temporary alimony as an advance on equitable distribution, the family court noted that both parties treated the payments as alimony for tax purposes. We agree with Husband that this alone would have been insufficient to support the family court's refusal to exercise the discretion it reserved in the temporary order to treat alimony paid during the pendency of the litigation as an advance on equitable distribution. The court also found, however, that the amount of alimony Husband paid before the final hearing was "an appropriate amount of alimony as temporary alimony," and we have found nothing in the record on appeal warranting reversal of this finding.

At the temporary hearing in November 2007, Wife revealed on her financial declaration she was earning $1,030.75 per month from her job as a surgical nurse. In addition, she noted two sources of rental income of $900 per month and $1,025 per month, as well as her monthly salary from Pittman Professional Land Surveying of $4,166.67. In the temporary order, the family court noted Husband had terminated Wife's employment with the business and found Wife was able to work but had not been employed fulltime outside the business for several years. In directing Husband to pay temporary alimony of $2,500 per month, the court encouraged Wife to find employment and specifically "reserve[d] the right to offset

temporary alimony against [Wife's] equitable distribution if the Court at the final hearing determines that such is appropriate." According to Wife's final financial declaration, dated January 20, 2009, she was earning $3,194 per month from her job.[3] The portions of the transcript included in the record on appeal, however, do not indicate when Wife's job earnings increased. During oral argument, counsel for Wife advised that no such information was presented during the hearing, and opposing counsel offered no opposition to this assertion during rebuttal. Neither party suggested any other variables that this court could consider in determining whether Husband could receive an offset of the temporary alimony that he paid against Wife's share of the marital property. We therefore hold the record is insufficient for this court to make findings of fact as to whether any part of the temporary alimony paid should be offset against Wife's share of the marital estate. *See Medlock v. One 1985 Jeep Cherokee VIN 1JCWB7828FT129001,* 322 S.C. 127, 132, 470 S.E.2d 373, 376 (1996) (stating the appellant has the burden of providing a sufficient record upon which the appellate court can make a decision). Moreover, given the Supreme Court's recent censure of allowing "a second bite at the apple," we decline to remand the matter to the family court for further proceedings on this issue. *Lewis v. Lewis,* 392 S.C. at 393 n. 11, 709 S.E.2d at 656 n. 11.

## IV. Attorney's Fees

■ Husband next challenges the award of attorney's fees to Wife, arguing

(1) the family court made insufficient findings of fact to support the award; (2) the family court appeared to have placed undue emphasis on his marital misconduct, noting further that he freely admitted his adultery; (3) the family court penalized him for refusing to concede the issue of transmutation; (4) the family court did not give due consideration to the consequences of the award on Husband's finances; (5) Wife made spurious claims during the proceedings regarding valuation of certain assets; and (6) Wife wasted money on

---

**3.** At this time, one of Wife's rental properties was vacant; therefore, she was receiving only $1,025 per month in rental income.

unnecessary private investigator fees. We find no abuse of discretion. *See O'Neill v. O'Neill,* 293 S.C. 112, 119, 359 S.E.2d 68, 73 (Ct.App.1987) ("It is elementary that an award of attorneys' fees is discretionary with the trial judge."). Here, the family court awarded Wife only fifty-six percent of her total fee; thus, we find the court gave sufficient consideration to any misconduct on Wife's part that prolonged the litigation unnecessarily. Furthermore, although we do not dispute that Husband has the right to advance a meritorious position on certain issues even if they are ultimately rejected by the family court, this right does not override the principle that beneficial results obtained by counsel remains a factor in determining a reasonable attorney's fee in a family court case. *See Glasscock v. Glasscock,* 304 S.C. 158, 160–61, 403 S.E.2d 313, 315 (1991) (rejecting the appellant's argument that an attorney's fee awarded by the family court was in effect a contingency fee, but nevertheless citing "beneficial results obtained" as one of the six factors in determining a reasonable attorney's fee).

V. Valuation of Vehicles

██ Husband next argues the family court erred in finding that a Volvo and a Volkswagen, both of which were awarded to Wife, were each worth $8,000. He claims Wife did not offer testimony or other evidence about the value and that the values that he presented in his testimony were the only competent evidence on this issue. We disagree. In the marital assets addendum to Wife's financial declaration, she listed both vehicles with the corresponding values. Although, as Husband argues in his reply brief, he conceded to admitting the addendum only as a summary of Wife's testimony, there is nothing in the record indicating the family court admitted it for only this limited purpose. Moreover, the statement by Wife's counsel that the vehicles were "$8,000 each" was made during Wife's direct examination and was not a statement by counsel to the court. Though the inquiry was not artfully presented, common sense warrants interpreting it as a question. We hold Wife, in answering this question in the affirmative, presented evidence of the values of these items. *See Reiss v. Reiss,* 392 S.C. 198, 204, 708 S.E.2d 799, 802 (Ct.App. 2011) (stating the family court "has broad discretion in valuing

marital property" and its valuation of marital assets "will not be disturbed absent an abuse of discretion").

## VI. Transmutation of Pittman Professional Land Surveying

The family court found Pittman Professional Land Surveying had been transmuted into marital property "as evidenced by the intent of [Husband] to treat the same as a marital asset," but made no findings as to Wife's intent. Husband disputes the finding concerning his intent that to treat the asset as marital property, arguing (1) he never referred in any way to the business that would indicate that Wife had any interest in it; (2) Wife was only an employee of the business and received a salary for her services and, after she was discharged, unemployment benefits to which she would not have been entitled if she had an ownership interest in the business; and (3) an unlimited guarantee provided by Wife to help secure credit for the business had expired several years before the commencement of this action. We hold these arguments do not warrant reversal of the finding by the family court that Wife met her burden to prove transmutation.

Property acquired by either party before the marriage is considered nonmarital; however, it may be transmuted into marital property if "(1) it becomes so commingled with marital property as to be untraceable; (2) it is jointly titled; or (3) it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property." *Pool v. Pool,* 321 S.C. 84, 88, 467 S.E.2d 753, 756 (Ct.App.1996) (emphases added). "The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Id.*

We agree with Wife the record supports the family court's finding that Husband intended to treat Pittman Professional Land Surveying as a marital asset. Wife was listed as secretary for the corporation. After the parties married in 2000, Wife, with Husband's consent, reduced the hours she worked at her nursing job to work full-time in the business and thus contributed less to her 401K and retirement accounts. Most significantly, Husband and Wife agreed that the business

would pay Wife a higher salary for her services than what her services warranted with the expectation that this business decision would benefit both parties during their retirement together. Under these circumstances, we decline to disturb the finding that Pittman Professional Land Surveying had been transmuted. *See Lewis v. Lewis,* 392 S.C. at 392, 709 S.E.2d at 655 ("[T]he family court's factual findings will be affirmed unless 'appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court.' ") (quoting *Finley v. Cartwright,* 55 S.C. 198, 202, 33 S.E. 359, 360–61 (1899)).

VII. Equitable Apportionment of Pittman Professional Land Surveying

 Husband further argues that if we uphold the family court's finding that Pittman Professional Land Surveying is a marital asset, Wife's interest in this asset should have been limited to a special equity. In the alternative, Husband contends he should have received credit for the premarital value of the business. We reject both arguments.

At the final hearing, objective evidence was presented to show that during the marriage, both parties regarded the business as the common property of the marriage. *See Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 110–11 (Ct.App.1988) ("The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage."). The parties pooled their earnings, and with Husband's approval the business paid Wife a higher salary with the objective of increasing her Social Security income and ultimately providing more money for both parties during their retirement. In addition, Wife relinquished retirement benefits that she could have earned through full-time nursing work in order to devote time to developing the business. She made this sacrifice with the expectation that the business would take care of both parties when they retired. We therefore uphold the family court's finding that the business was transmuted into marital property and further hold it is unnecessary to consider whether Wife should have received only a special equity in this asset.

In support of his position that he should have received some credit for the premarital value of the business, Husband argues "the trial judge certainly had no problem in 'backing out' the nonmarital portion of the wife's retirement savings plan." Whereas, however, the family court determined that the entire business had been transmuted into a marital asset, there was no finding that the nonmarital portion of Wife's retirement account had been transmuted. The distribution of Wife's retirement account was based on a completely different premise from the distribution of Pittman Professional Land Surveying. In the case of the business, the premarital value of that asset was determined to have been transmuted into marital property.

VIII. Laptop Computer

Finally, Husband argues the family court should not have allowed Wife to retain possession of a laptop computer that she purchased with company funds after the filing of this action. We agree.

In allowing Wife to retain the computer, the court noted only that "no credible testimony was offered as to its value." It was undisputed, however, that Wife purchased the computer after the filing of this action with funds belonging to Pittman Professional Land Surveying, an asset awarded in its entirety to Husband as his portion of the marital estate. We agree with Husband that the award to him of the business, together with all its assets, should have included the laptop. Although the family court's remarks suggest Wife would have been ordered to reimburse Husband for the computer had evidence of its value been presented at trial, the absence of this information did not prevent the court from using a "reasonable means to achieve equity between the parties." S.C.Code Ann. § 20–3–660 (Supp.2010). Full equity between the parties could easily have been attained by awarding the computer to Husband. We therefore reverse the award to Wife of the laptop computer and hold the family court should have awarded it to Husband.

## CONCLUSION

We affirm the family court's decisions regarding alimony and attorney's fees. As to Husband's appeal of the equitable

division award, we affirm the family court's valuation of the equitable division award, the court's inclusion of Pittman Professional Land Surveying in the marital estate, and the court's refusals to limit Wife's interest in the business to a special equity and to award Husband credit for the premarital value of the business. We hold, however, the family court erred in allowing Wife to retain possession of the laptop computer and therefore reverse this provision of the appealed order.

**AFFIRMED IN PART, REVERSED IN PART.**

HUFF and WILLIAMS, JJ., concur.