730 S.E.2d 320

Ex parte Stephen E. LIPSCOMB, Ron Safko,
and L.K. Harrell, III, Appellants,

In re Glenn Y. Hollis, Jr., John E. Hollis, Joseph R.
Robinson, Janette H. Robinson, Respondents,

v.

Stonington Development, LLC, Appellant.

No. 4961.

Court of Appeals of South Carolina.

Heard Jan. 25, 2012.
Decided April 4, 2012.
Rehearing Denied July 26, 2012.

George Verner Hanna, IV, William Saltzman, and Timothy Quinn, all of Columbia, for appellants.

H. Freeman Belser, of Columbia, for respondents.

WILLIAMS, J.

Stonington Development, LLC (Stonington), Stephen Lipscomb (Lipscomb), Ron Safko (Safko), and L.K. Harrell, III (Harrell) (collectively, Appellants) appeal the circuit court's order of civil contempt and assessment of attorney's fees against them for Stonington's failure to abate the discharge of sediment-laden storm water onto the Hollis's and Robinsons' (collectively, Respondents) residential properties. We reverse.

## FACTS/PROCEDURAL HISTORY

Stonington is the developer of a residential subdivision in the Blythewood area of Columbia, South Carolina. Respondents own properties immediately downstream from Stonington's development. On July 29, 2005, Respondents filed suit and asserted several causes of action against Stonington on the grounds that Stonington damaged their properties as a result of increased stormwater runoff and siltation from the development project. On April 6, 2007, after a four-day trial, a jury returned a verdict against Stonington for $400,000 in actual damages and $3,500,000 in punitive damages.[1] Respondents then filed a separate lawsuit against Lipscomb, Stonington's majority shareholder, to pierce Stonington's corporate

---

1. Stonington appealed several aspects of the underlying punitive damages award in *Hollis v. Stonington Dev., LLC,* 394 S.C. 383, 714 S.E.2d 904 (Ct.App.2011). This court affirmed the denial of the directed verdict motion on punitive damages and the jury charge on punitive damages but found the imposition of a $3.5 million dollar punitive damages award excessive and accordingly reduced the award to $2 million dollars. *Id.* at 407, 714 S.E.2d at 917.

veil. Lipscomb, in turn, joined Harrell and Safko as third-party defendants.[2]

After the April 6, 2007 jury verdict, Respondents elected to proceed under a private nuisance cause of action and accordingly moved to enjoin Stonington from discharging sediment-laden stormwater onto Respondents' properties. On September 17, 2007, the circuit court issued a Form 4 order granting Respondents' motion for a permanent injunction, and in a subsequent, formal order dated June 26, 2008, enjoined Stonington "from discharging sediment-laden stormwater onto [Respondents'] property and causing damage thereto." The circuit court then held the injunction was "binding upon Stonington Development, LLC and its officers, agents, employees, and members" in accordance with Rule 65(d), SCRCP. The same day, Respondents personally served the injunction on Stonington, Lipscomb, Harrell, and Safko.

Neither Stonington nor its members filed a Rule 59(e), SCRCP, motion to reconsider the injunction, nor did they appeal the issuance of the injunction. On September 11, 2008, Respondents filed a motion to hold Stonington and its members in civil contempt for willfully disregarding the court's prior injunction. The circuit court issued a rule to show cause on November 6, 2008, which was served on Stonington and each member. After one continuance, the circuit court held a hearing on April 14, 2009, at which time Respondent Janette Robinson (Robinson), Kevin Lee (Lee) of the Stonington Homeowners' Association, and Lipscomb testified.

During the hearing, Robinson testified that when it rained, muddy water entered Respondents' ponds by way of an unnamed tributary. She stated a seventy-two inch pipe coming out the back of Stonington's stormwater management system fed into this tributary. The sediment and discharge from the pipe discolored the water and caused erosion of the soil and ponds on Respondents' properties. When questioned, Robinson stated Respondents did not attempt to remediate the problems because it was Stonington's problem to fix. Robinson acknowledged Stonington laid hay bales and erected three sets of silt fences along the sewer line between the properties

---

2. The suit to pierce Stonington's corporate veil in that action is not before this court on appeal.

but stated siltation was not an issue in those areas. She testified she was aware Lipscomb hired Carolina Erosion Control to abate the problem of siltation. In addition, Robinson stated she had not taken any engineers to the property since the trial to assess where the siltation was coming from and had taken no samples from the pond since the date of trial. However, she stated Respondents failed to take any remedial action by removing the silt from the ponds because there "was no sense in cleaning out the pond until the problem is stopped." Robinson submitted numerous photographs of Respondents' ponds and wetlands to document her complaints and support her testimony.

Kevin Lee, chair of the Advisory Committee for the Stonington Homeowners' Association, testified at the hearing. He testified he had lived in Stonington for four years. During that time, he saw the development erect silt fences, lay hay bales, and he observed contractors in different areas attempting to remediate the siltation issues. Lee observed siltation in the sediment pond in Stonington's development as well as the main pond behind Stonington's clubhouse but acknowledged he had never been to Respondents' properties or ponds. Lee claimed the lawsuit forced Stonington to financially abandon the Homeowners' Association, which adversely affected the quality of the development and the homeowners' property value.

Lipscomb also testified about efforts he undertook on behalf of Stonington to abate the siltation and stormwater issues. He stated:

I've had—there's been three separate engineers to look over the plans. And I've also hired professionals to keep the necessary silt fencing and dams in place. And I also had some—another professional company to monitor that. And I hired—I asked all around and I hired the best people recommended—that I could get recommended in the state.

The circuit court excluded the reports from Carolina Stormwater Services due to the engineer's failure to appear at the hearing. However, Lipscomb testified Carolina Stormwater Services inspects the property and issues a report to him every seven days. He stated Carolina Stormwater Services also engineered a silt rock dam to prevent sediments from the stormwater pipes from entering Respondents' ponds. Lips-

comb admitted there were other actions that could be taken to ameliorate the situation, but because of his inability to further develop upper lots in the development as a result of the injunction, the land surrounding Respondents' property that was contributing to the problems could not be fully stabilized.

After viewing photographs submitted by both parties and hearing the foregoing testimony, the circuit court issued an order on September 28, 2009, finding Stonington and its members in contempt of court. In the contempt order, the circuit court found Stonington, Lipscomb, Safko, and Harrell jointly and severally liable for compensatory contempt based on Stonington's "minimal efforts ... to stop the siltation and increased runoff problems." The circuit court fined Stonington and its members $25,000 to be paid to Respondents. It also authorized Respondents to submit a motion and supporting affidavit for reasonable attorney's fees and costs specifically incurred as a result of Respondents' efforts to enforce the injunction. Respondents then submitted a motion for attorney's fees and costs, and the circuit court ordered Stonington, Lipscomb, Safko, and Harrell to pay Respondents $52,695, which included $25,000 in compensatory contempt as well as $27,695 in attorney's fees and costs. Stonington, Lipscomb, Safko, and Harrell submitted Rule 59(e), SCRCP, motions for both orders, which the circuit court denied. This appeal followed.

## STANDARD OF REVIEW

"A decision on contempt rests within the sound discretion of the [circuit] court." *Floyd v. Floyd*, 365 S.C. 56, 71, 615 S.E.2d 465, 473 (Ct.App.2005). It is within the circuit court's discretion to punish by fine or imprisonment every act of contempt before the court. *Miller v. Miller*, 375 S.C. 443, 454–55, 652 S.E.2d 754, 760 (Ct.App.2007). On appeal, this court should reverse the contempt decision only if it is without evidentiary support or the circuit court abused its discretion. *Floyd*, 365 S.C. at 71–72, 615 S.E.2d at 473.

## LAW/ANALYSIS

### A. Contempt

First, Appellants argue the circuit court erred in holding them in contempt because Respondents failed to present

clear and convincing evidence that Appellants intentionally disregarded or willfully disobeyed the injunction. We agree.

■■■ "Contempt results from the willful disobedience of a court order, and before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." *Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct.App.2001). "A willful act is one ... done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Ex parte Cannon*, 385 S.C. 643, 661, 685 S.E.2d 814, 824 (Ct.App.2009). "Once the moving party has made out a prima facie case [for contempt], the burden then shifts to the respondent to establish his ... defense and inability to comply with the order." *Id.* "If, through no fault of his own, the contemnor is unable to obey a court order, the contemnor cannot be held in contempt." *Id.* "Civil contempt must be [shown] by clear and convincing evidence." *Poston v. Poston*, 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998).

We find Respondents failed to present clear and convincing evidence at the rule to show cause hearing that Stonington and its members willfully and intentionally disobeyed or disregarded the circuit court's injunction.

■■■ Both Robinson and Lipscomb agreed that Stonington's efforts have not stopped all discharge of sediment-laden stormwater onto Respondents' property. As such, Stonington has failed to do everything required by the terms of the injunction. However, Stonington's failure to do so does not necessarily render it in contempt. Our case law is clear that contempt is only proper when a party voluntarily and intentionally disobeys or disregards a court order. *See Ex Parte Kent*, 379 S.C. 633, 637, 666 S.E.2d 921, 923 (Ct.App.2008) (holding that a willful act is one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law").

Lipscomb testified he hired consultants and workers to monitor Respondents' property and to erect fencing, rock

dams, and hay bales. Although Robinson testified the efforts Lipscomb made were insufficient because they did not alleviate the siltation and stormwater runoff issues, she acknowledged the presence of the silt fencing and hay bales and was aware of Stonington's hiring of consultants and engineers to address the stormwater and siltation issues. Furthermore, Lee's testimony that he saw Stonington erect silt fences and lay hay bales and observed contractors in different areas attempting to remediate the siltation issues supports Stonington's contention that it made good faith efforts to abide by the terms of the injunction.

■ A good faith attempt to comply with the court's order, even if unsuccessful, does not warrant a finding of contempt. See Abate v. Abate, 377 S.C. 548, 554, 660 S.E.2d 515, 519 (Ct.App.2008) (holding father's failure to give child medication during summer visitation, despite court's order to do so, did not warrant a finding of contempt because father made a good faith effort to comply with the order so that his disobedience was not willful); Burnell v. Burnell, 359 S.C. 361, 365–66, 597 S.E.2d 24, 26–27 (Ct.App.2004) (finding the family court erred in holding mother in contempt because mother made good faith effort to comply with joint custody order); see also State v. Spare, 374 S.C. 264, 270, 647 S.E.2d 706, 709 (Ct.App.2007) (finding trial court erred in revoking probation for failure to pay restitution because probationer was making progress, albeit slow, toward paying his restitution obligation, which negated the trial court's finding that probationer willfully failed to comply with order). Because the evidence does not clearly and convincingly prove Appellants intentionally violated the mandates of the injunction, we find the circuit court's contempt order was without evidentiary support, and thus, we reverse the circuit court's decision to hold Stonington, Lipscomb, Harrell, and Safko in contempt.[3]

---

3. We need not address any of Appellants' remaining arguments on the circuit court's contempt ruling because our determination on this issue is dispositive; thus, we decline to address those remaining issues in this appeal. See Futch v. McAllister Towing Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## B. Attorney's Fees

Appellants raise several grounds in support of their argument that the circuit court erred in assessing attorney's fees against Stonington as well as Lipscomb, Harrell, and Safko. Because the award of attorney's fees was predicated on the circuit court's finding of contempt, we reverse the award of attorney's fees. *See Myers v. Myers,* 391 S.C. 308, 321, 705 S.E.2d 86, 93–94 (Ct.App.2011) ("[I]t is not improper for this court to reverse an attorney's fees award when the substantive results achieved by trial counsel are reversed on appeal.").

## CONCLUSION

Accordingly, the circuit court's ruling is

**REVERSED.**

SHORT and GEATHERS, JJ., concur.