# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Elizabeth Campione, Appellant/Respondent,

v.

Willie Best, Respondent/Appellant.

Appellate Case No. 2018-002017

---

Appeal From Richland County
Dana A. Morris, Family Court Judge

---

Opinion No. 5874
Submitted May 3, 2021 – Filed December 1, 2021

---

## AFFIRMED IN PART AND REVERSED IN PART

---

Victoria L. Eslinger and Marcus A. Manos, both of
Nexsen Pruet, LLC, of Columbia, for
Appellant/Respondent.

Suzanne L. Hawkins, of Duff Freeman Lyon, LLC, of
Columbia, for Respondent/Appellant.

---

**HILL, J.:** Elizabeth Campione and Willie Best divorced in 2008 after thirty-three years of marriage. The parties entered into property settlement agreements in 2008 and 2009, which were approved by and became non-modifiable orders of the Family Court. At the time of the divorce, Best owned numerous patents and other intellectual property, which he valued at $30 million on his financial declaration. Their settlement agreement included the following provision:

Husband has been and is currently receiving payments from patents, trademarks, and licensing agreements. Husband anticipates continuing to receive such payments for current and future patents, trademarks, and licensing agreements. From the funds which are being paid from Husband's current and future patents, trademarks, and licensing agreements, Husband shall pay to Wife the sum of $50,000 per year, which shall be paid in equal consecutive quarterly installments of $12,500 per quarter . . . . The payments shall be made from the funds Husband earns from current and future patents, trademarks, and licensing agreements. If Husband earns less than $50,000, Wife shall receive all of that which Husband earns. If Husband earns in excess of $50,000, Husband shall have all the funds which exceed the $50,000.

The 2009 supplemental agreement also required Best to maintain Campione as the irrevocable beneficiary on Northwestern Mutual Life Insurance Policies Nos. 052 and 198. It is undisputed Best later substituted his company as the sole beneficiary in place of Campione on Policy No. 198 but simultaneously named Campione as beneficiary of a new policy with a similar benefit amount.

The parties' agreement further provided Best would pay Campione $12,000 in monthly alimony by direct deposit. After the divorce, Best paid his monthly alimony obligation by directly depositing his social security check into Campione's account, together with a second payment for the balance. Best's social security benefit increased over time, but he never reduced the amount of his second payment, resulting in an overpayment of alimony to Campione.

In 2016, Campione brought this contempt action against Best, claiming he had failed to make the quarterly payments and maintain her as the beneficiary on Policy No. 198. Best countered with his own contempt action, alleging he had overpaid Campione alimony.

Best claimed he ceased the quarterly payments because he sold all the patents to Char-Broil in 2009. In the sale, Char-Broil purchased the patents from Best for $20,625,000. In return, Best obtained a note wherein Char-Broil promised to pay him $375,000 per quarter through June 2023. Best had recently received advice

2

from a patent lawyer that the sale meant Char-Broil owned the patents and the sale proceeds were no longer subject to the quarterly payment provision.

The Family Court ruled the quarterly payments provision was broad enough to encompass the Char-Broil payments and Best must resume making them. It further ruled Best owed Campione $75,000 plus interest in missed payments. The Family Court refused to hold Best in "willful contempt because he has taken the position that he was, perhaps, relying on the advice of an attorney."

However, Best was held in contempt for removing Campione as beneficiary on Policy No. 198. As to Best's contempt action, the court found Campione did not violate the order by retaining the $26,025 in alimony overpayments but allowed Best to set the overpayments off against the $75,000 he owed Campione in past due quarterly payments. Finally, the Family Court awarded Campione $60,000 in attorney's fees and costs. Both sides now appeal.

## I. *Standard of Review for Civil Contempt*

Civil contempt occurs when a party willfully disobeys a clear and definite court order. *See Phillips v. Phillips*, 288 S.C. 185, 188, 341 S.E.2d 132, 133 (1986); *see also Welchel v. Boyter*, 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973) (to support contempt finding, language of court order "must be clear and certain rather than implied"). In the context of civil contempt, an act is willful if it is "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Spartanburg Cnty. Dep't of Soc. Servs. v. Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988) (citation omitted). Contempt must be proven by clear and convincing evidence, and the record must demonstrate the specific contemptuous act. *Ex parte Lipscomb*, 398 S.C. 463, 469, 730 S.E.2d 320, 323 (Ct. App. 2012); *Curlee v. Howle*, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982). We review contempt orders for abuse of discretion, meaning we may only disturb them if they are based on incorrect law or inadequate evidence. *Means v. Means*, 277 S.C. 428, 431, 288 S.E.2d 811, 812–13 (1982).[1]

---

[1] Although *Stoney v. Stoney*, 422 S.C. 593, 595–96, 813 S.E.2d 486, 487 (2018), did not address family court contempt actions or overrule *Means*, we are mindful it may mean our standard of review is de novo rather than abuse of discretion. Even if we widened our scope of review to de novo as to each issue raised by this appeal, it

A. *The Quarterly Payment Provision*

Best contends the Family Court erred in finding the Char-Broil payments were covered by the quarterly payment provision. Campione claims the Family Court erred in not finding Best in contempt of the provision.

A court order or judgment is construed like any written instrument. *Doe v. Bishop of Charleston*, 407 S.C. 128, 135, 754 S.E.2d 494, 498 (2014). Whether a court order is clear and unambiguous is a question of law for the court. Courts are empowered to interpret their own orders, and the interpretation does not typically require or permit translation by witness opinion. The Family Court quite correctly refused to allow Best's patent counsel to testify about his interpretation of the quarterly payment provision. *See Carter v. Bryant*, 429 S.C. 298, 313, 838 S.E.2d 523, 531 (Ct. App. 2020) (expert testimony on law generally inadmissible). In fact, there was no room for interpretation as the intent and meaning of the quarterly payment provision is readily revealed by its plain language. *Doe*, 407 S.C. at 135, 754 S.E.2d at 498.

We agree with the Family Court that the quarterly payment provision covers the Char-Broil payments as they represent funds Best continues to earn from patents. Viewing the record against the quarterly payment order, there is no fair ground to doubt the Char-Broil payments were subject to it. The payments are earnings from patents he owned at the time of the agreement, which comprise a fund from which he is being paid until 2023. To be sure, Best could have structured the 2009 sale to receive the entire sale price that same year and had that happened he would not have had to pay Campione from those funds beyond that date. But that is not what happened.

While we agree with the Family Court's reading of the quarterly payment provision, we agree with Campione that there is clear and convincing evidence Best willfully violated it. The provision was a clear and unambiguous order of the Court. That is likely why Best continued to make the quarterly payments for seven years after the Char-Broil sale. He boasted that after he signed the provision, he never read it again until this contempt action arose. This curious admission sinks Best's claim that he

---

would not affect our resolution. We would decide each issue the same. *See also Lewis v. Lewis*, 392 S.C. 381, 709 S.E.2d 650 (2011).

sought the advice from patent counsel before stopping the payments and the contempt action began. It also puts to bed any idea Best was acting in good faith.

As to Best's reliance on the advice of counsel, we hold even had he obtained the advice before stopping the payments, it would be no defense to a civil contempt action. *Columbia Water Power Co. v. City of Columbia*, 4 S.C. 388, 401 (1873) (advice of counsel not a defense to contempt but may be a mitigation); *see also Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995) (same); *see generally* 17 Am. Jur. 2d Contempt § 145; 17 C.J.S. Contempt § 61. We decline to permit the mere advice of counsel to immunize parties from claims of contemptuously disobeying plain and explicit court orders.

We acknowledge a party who attempts in good faith to comply with a court order should not be held in contempt. *Lipscomb*, 398 S.C. at 470, 730 S.E.2d at 324. But the record discloses Best's road to contempt was not paved with good faith but with cunning. *See State ex rel. Love v. Howell*, 285 S.C. 53, 55, 328 S.E.2d 77, 78 (1985). For instance, Best insisted the stream of payments from Char-Broil he has received since the 2009 sale were not earnings from his patents but from "the note." In the contempt context, failure to obey is not excused just because a party dons blinders and convinces himself a court order does not mean what it plainly says. We therefore reverse the Family Court order on this issue and hold Best willfully violated the quarterly payment provision.

### B. *The Life Insurance Beneficiary Provision*

Best asserts the Family Court erred in finding he committed contempt by switching out the beneficiary on Policy No. 198. He maintains the switch caused Campione no harm because he named her as the beneficiary of a new policy in a similar amount. Best explained he made the switch to save on premiums and ease the financial stress he and his company were under after the recession. These events provided no license to disobey the court order. *See Means*, 277 S.C. at 431, 288 S.E.2d at 812–813 (holding ex-husband in contempt for removing wife as beneficiary of life insurance policy in violation of court order; ex-husband's claim that he was forced to cash in policy to pay for son's education unavailing). Besides, Campione was harmed. The record reverbs with concrete proof of the anxiety she endured and the needless time and energy she spent trying to restore the financial security the life insurance provision was designed to provide her. We therefore affirm that Best's removal of Campione as the beneficiary of Policy No. 198 constituted civil contempt.

C. *Set Off of Best's Alimony Overpayments Against His Quarterly Payment Debt*

Campione assails the Family Court's set off ruling on several grounds. She first claims set off was an affirmative defense Best failed to plead. This argument misfires, as the set off issue arose from Best's–not Campione's–contempt pleading. As such, the concept of an affirmative defense does not apply.

Next, Campione contends Best is equitably estopped from refund of the overpayment because he failed to monitor the amount of his social security benefit, causing Campione to rely on the additional alimony. Estoppel has numerous elements, including affirmatively misleading conduct by a party with the intent that the other party rely upon it to her detriment and that the relying party lacked knowledge of or the means to obtain knowledge of the true facts. *Rodarte v. Univ. of S.C.*, 419 S.C. 592, 601, 799 S.E.2d 912, 916–17 (2017). Best's conduct was more akin to inattention than intent, and estoppel does not bar his right to a refund, particularly as Campione knew or should have known of the overpayment when it hit her account. The Family Court based the set off on its equity powers, powers we conclude were sensibly used.

Finally, Campione claims the Family Court erred by receiving information after the final hearing about Best's historical social security benefit amounts and then ruling on the set off amount without convening an additional hearing. Despite opportunity, Campione never objected to this procedure, and consequently, the issue is not preserved for our review.

D. *Attorney's Fee Award*

Best protests the $60,000 attorney's fee award as being too much; Campione says it is too little. We agree with the Family Court that Campione's requested fees of $110,000 far exceeded the range of reasonableness for the issues tried. The correct measure for attorney's fees awards in civil contempt cases focuses on the reasonableness of the fees sought and the benefit obtained without regard to the financial impact of the award. *Miller v. Miller*, 375 S.C. 443, 463, 652 S.E.2d 754, 764 (Ct. App. 2007). Fee awards in contempt cases serve to reimburse a party for the reasonable fees and costs incurred to enforce a court order, not to punish. *Poston v. Poston*, 331 S.C. 106, 114, 502 S.E.2d 86, 90 (1998). Therefore, the Family Court should have applied the *Miller* and *Poston* factors rather than the criteria for awarding fees in other types of family court matters as set forth in *E.D.M. v. T.A.M.*,

307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (entitlement to attorney's fees), and *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (amount). Fortunately, this is of no moment here as the Family Court order well analyzed the reasonableness of Campione's fees and the benefits she obtained. We therefore affirm the award of $60,000 in fees to Campione.

**AFFIRMED IN PART AND REVERSED IN PART.[2]**

**THOMAS and GEATHERS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.